# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LIONEL GARCIA COLON,**

      **Plaintiff,**

v.                                                                                                 Case No: 6:18-cv-1382-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Lionel Garcia Colon (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) terminating Claimant's benefits. Doc. 1; R. 1-10, 17-18. Claimant argues, in part, that the Administrative Law Judge (the ALJ) erred by misstating the record. Doc. 19 at 31-33. For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED**.

## I. THE ALJ'S DECISION

On or about July 16, 2013, the Commissioner found that Claimant had been disabled between July 6, 2011 and July 16, 2013. R. 17-18. Due to intervening circumstances not relevant here, Claimant's disability came up for redetermination. *Id.* The issue on redetermination was whether Claimant was entitled to benefits from July 1, 2011 through July 16, 2013. R. 19.

The ALJ issued her decision on August 31, 2016. R. 17-33. In her decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease and affective disorder. R. 22. The ALJ found that through July 16, 2013, Claimant had a residual functional

capacity (RFC) to perform less than a full range of light work as defined by 20 C.F.R. § 404.1567(b).[1] R. 19-20. Specifically, the ALJ found as follows:

> After careful consideration of the entire record, I find that, through July 16, 2013, Mr. Garcia had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he required the ability to sit or stand, alternately, at will while at his workstation provided he was not off task more than 10% of his workday. He could frequently climb ramps and stairs and frequently balance. Mr. Garcia was capable of occasionally climbing ladders, ropes and scaffolds as well as occasionally stooping, kneeling, crouching and crawling. He could frequently reach in any direction with either upper extremity. He could not tolerate exposure to extreme temperatures of cold and heat, humidity, excessive vibration, and pulmonary irritants. Mr. Garcia could not tolerate exposure to workplace hazards such as dangerous moving machinery and unprotected heights. He could perform simple tasks.

R. 24. The ALJ then found that through July 16, 2013, Claimant was capable of performing jobs that existed in significant numbers in the national economy and, therefore, that Claimant was not disabled between July 1, 2011 and July 16, 2013. R. 31-33.

## II. STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.   ANALYSIS

Claimant argues that the ALJ erred by misstating the record. Doc. 31-33. Specifically, Claimant argues that the ALJ repeatedly misstated the record when analyzing Claimant's alleged need for a cane, and, thus, the ALJ's determination that Claimant did not require a cane is not supported by substantial evidence. In particular, Claimant directed the Court to several instances in which the ALJ allegedly misstated the record: (1) the ALJ allegedly incorrectly stated that she was unable to find a prescription or note from a doctor suggesting that Claimant required a cane; (2) the ALJ allegedly incorrectly stated that the records of Claimant's treating physician (Dr. Maisonet Correa) did not contain a prescription for, or suggest the use of, a cane; and (3) the ALJ allegedly incorrectly stated that Dr. Maisonet Correa opined in 2015 that Claimant did not need a cane to walk.

In *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983), the Eleventh Circuit held that an ALJ's misstatement of fact is harmless error if it does not affect the ALJ's conclusion. However, Courts in this district have found that if the ALJ makes a misstatement of fact that is material or integral to the ALJ's ultimate decision, then the misstatement is not harmless and remand may be warranted. *See Bissinger v. Comm'r of Soc. Sec.*, 2014 WL 5093981, at *5-6 (M.D. Fla. Oct. 9, 2014) (finding that the ALJ's misstatement of fact was not harmless) (citations omitted); *see also White v. Comm'r of Soc. Sec.*, 2010 WL 3467413, at *15-16 (M.D. Fla. Aug. 3, 2010) (finding that the ALJ's decision was not supported by substantial evidence because the ALJ misstatement of fact substantially affected the ALJ's ultimate conclusion), *report and recommendation adopted*, 2010 WL 3448617 (M.D. Fla. Sept. 1, 2010); *but see Washington v. Astrue*, 2009 WL 2949034, at *14 (M.D. Fla. Sept 14, 2009) (finding that the ALJ made a material misstatement of fact, but that a single erroneous statement by the ALJ did not require remand) (citation omitted). In addition, Courts in this district have found that remand may be warranted where the ALJ misstates and mischaracterizes the record evidence on numerous points, even if only one such misstatement, standing alone, would not have necessitated remand. *See Beckford v. Berryhill*, 2017 WL 3835859, *7-9 (M.D. Fla. Aug. 16, 2017) (noting that the ALJ's numerous errors called into question the accuracy of the ALJ's decision); *Smith v. Astrue*, 2009 WL 3157639, *3-6 (M.D. Fla. Sept. 25, 2009) (finding that the ALJ's misstatements, taken as a whole, indicated that the ALJ failed to properly consider all the evidence); *Flentroy-Tennant v. Astrue*, 2008 WL 876961, *6-8 (M.D. Fla. Mar. 27, 2008) (noting that the ALJ's numerous misstatements revealed an inaccurate review of the record).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing,

and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Here, the ALJ found that Claimant did not require the use of a cane between July 1, 2011 and July 16, 2013. R. 24-30. Specifically, the ALJ stated as follows with respect to Claimant's alleged need to use a cane:

> Mr. Garcia presented to hearing with a cane in his left hand. When asked, he stated that he has been using the cane, on advice of his doctor, since June 2011 for support and balance. (hearing testimony at 12:25:31AM). The date is consistent with the beneficiary's alleged date of onset. ***However, I am unable to find a corresponding prescription or note from the beneficiary's doctor during the relevant period that suggested he needed a cane.*** The medical evidence prior to and subsequent to the beginning of the use of his cane is also enlightening.
>
> He began treatment for lower back and leg pain in March 2011. An x-ray of his lumbar spine from this time showed straightening of the lumbar lordosis and some lower back spasm but no evidence of any other abnormalities. (Ex. 11F/8). An April 2011 MRI indicated he had an annular fissure at L5-S1 but with no other signs of spinal or canal stenosis or foraminal narrowing. (Ex. 11F/6). His spine at this time was essentially normal. A July 2011 x-ray of his cervical spine showed multilevel degenerative disc disease as did his follow up x-ray of his lumbar spine. (Ex. 16F/15). But still, none of the objective images showed a condition congruent with the need to walk with a cane or as a source of the beneficiary's alleged pain and soreness.
>
> Mr. Garcia presented to the Metropolitan Community Clinic in August 2011 with continued complaints of back and knee pain. (Ex.14F/2). He did present to his psychological consultative examination in October 2011 using his cane. *Dr. Davila Velez, a second consultative examiner, also reported Mr. Garcia's use of cane in November 2011*. (Ex.17F/9). However, his treating physician, Dr. Jacqueline Colon Vazquez, never reported that he was using a cane on examination in late October 2011. (Ex.16F). He was discharged from the state insurance fund program "without disability." (*id*). A January 2012 follow-up visit with Dr. Maisonet Correa indicated Mr. Garcia was using a cane to walk. (Ex.28F/7). ***However, Dr. Maisonet Correa did not prescribe or suggest the use of the cane to Mr. Garcia. He also was never reported as needing the cane prior to that date during his treatment. It was not until July 2014, more than a year after the relevant period that Dr. Maisonet Correa determined that the beneficiary may have needed an ambulatory aid.*** (Ex.34F).
>
> Despite this late opinion, Mr. Garcia's other objective medical images from a February 2013 MRI again showed no evidence of canal stenosis or neural foraminal

encroachment. (Ex.30F/14). ***Dr. Maisonet Correa then contradicted his own earlier report from July 2014 as he reported as recently as September 2015 that the beneficiary did not need a cane to walk in his opinion on the beneficiary's function.*** (Ex.37F). The absence of any anatomical evidence as a cause does not necessarily mean the beneficiary has never felt any pain. But I am unable to rely on the medical evidence showing such extreme limitation without significant objective support. His degenerative condition, although patently mild in every objective test and image available to his doctors, is still present and could cause some limitations, consistent with the residual functional capacity determined above.

. . .

The record reflects that Mr. Garcia has made inconsistent statements regarding matters relevant to the issue of disability. The record indicated that he made conflicting statements regarding the severity of his mental health. (*see* Ex.26/11F v. 15F/6; *also see* Ex.26F/18 v. Ex.88F). Additionally, Mr. Garcia was not forthcoming with his past-history with Wellbutrin and other psychotropic medications. There is also the matter of his cane, which Mr. Garcia testified was suggested by his physician ***but upon review of the opinion evidence was found to have never been suggested during the relevant period but only observed in use.*** Although the inconsistent information provided by Mr. Garcia may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the beneficiary generally may not be entirely reliable.

. . .

I also considered the opinions of Dr. Carlos Maisonet Correa and give those opinions little weight. Dr. Correa stated that Mr. Garcia was "permanently disabled" in February 2012. (Ex.28F/18). The opinion was vague and conclusory and offered no function-by-function analysis. When Dr. Maisonet Correa did issue an opinion concerning the beneficiary's functional abilities, that opinion was still vague. He articulated that Mr. Garcia could not sit or stand in one position for more than twenty minutes, but then claimed the beneficiary could lift and carry weights as great as fifty pounds at five-minute intervals. This opinion sheds little light on Mr. Garcia's ability to lift and carry lighter weights on an occasional or frequent basis. ***Dr. Maisonet Correa added that the beneficiary needed the continuous help of a cane for balance. Yet in his own earlier treatment notes never found the beneficiary in need of a cane. This opinion also was made nearly a year after the relevant period so it gives no clarity as to the beneficiary's condition in 2012 and 2013. Dr. Maisonet Correa issued a later opinion in September 2015 (Ex.37F) and again, despite its detail and similarity to his previous opinions it contains no requirement for the use of a cane. It is self-contradictory, conclusory and also beyond the scope of this inquiry.***

R. 25-26, 28-29 (emphasis added).

However, a review of the record reflects that many of the foregoing statements are not correct. Specifically, the record reflects the following: (1) on November 14, 2011, Dr. Velez appears to have opined that Claimant required "some kind of assistive device" and noted that a physician prescribed an assistive device; (2) on February 20, 2013, Dr. Maisonet Correa appears to have opined that Claimant "needs support orthopedist cane"; and (3) Dr. Maisonet Correa did not opine in 2015 that Claimant did not require the use of a cane. R. 884, 1067, 1085-86.

Thus, the following statements by the ALJ are not supported by record: (1) Claimant's use of a cane was never suggested during the relevant period; (2) during the relevant period, Dr. Maisonet Correa never found that Claimant required a cane; and (3) Dr. Maison opined in 2015 that Claimant did not use a cane. Further, it also appears that the ALJ's statement that Dr. Velez merely observed Claimant using a cane is incorrect. The form completed by Dr. Velez specifically asked if Claimant was required to use an assistive device and Dr. Velez responded that Claimant did require an assistive device. R. 884.

Given the ALJ's seemingly heavy reliance on the foregoing misstatements regarding Claimant's alleged need to use a cane, the Court finds that the ALJ's misstatements were material and affected the ALJ's ultimate conclusion. Indeed, the ALJ repeatedly relied on these misstatements not only in finding that Claimant did not require the use of a cane, but also as support for finding that Claimant's testimony lacked credibility and that Dr. Maisonet Correa's 2014 opinions were entitled to little weight. And although the Court recognizes that the ALJ also found that "none of the objective images showed a condition congruent with the need to walk with a cane or as a source of the beneficiary's alleged pain and soreness," the Court cannot find that the ALJ's misstatements were harmless given the ALJ's heavy reliance upon them. R. 26. In addition, the ALJ herself noted that "[t]he absence of any anatomical evidence as a cause does not necessarily

mean the beneficiary has never felt any pain," thus raising the distinct possibility that the ALJ was unwilling to rely solely upon Claimant's objective images to determine that Claimant did not require a cane. R. 26. Given the foregoing, the Court finds that it cannot determine whether the ALJ's decision was supported by substantial evidence.[2] *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (citation omitted); *Flentroy-Tennant*, 2008 WL 876961, *8 ("An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion.") (citation omitted). And the Court will not and cannot reweigh the evidence. *Phillips*, 357 F.3d at 1240 n.8 (11th Cir. 2004) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'") (quotation omitted).

Lastly, the Court finds that the Commissioner's arguments to the contrary are unavailing. *See* R. 33-37. The Commissioner did not address the accuracy of the foregoing misstatements made by the ALJ or why those misstatements were harmless. Indeed, although the Commissioner seemed to concede that Dr. Maisonet Correa wrote that Claimant "needs support orthopedist cane," the Commissioner offered no argument to suggest that the ALJ did not misstate the record or that

---

[2] The Court further notes that it has questions regarding whether Dr. Velez's and Dr. Maisonet Correa's statements that Claimant required the use of an assistive device (R. 884, 1067) were in fact opinions, and, thus, whether the ALJ erred by failing to weigh these statements. However, because Claimant did not raise the issue, the Court finds that Claimant waived the issue for present purposes. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.")

the misstatement was not material.³ R. 35. Instead, the Commissioner essentially restated the same arguments made by the ALJ, which the Court discussed and dismissed *supra*.

Given all of the foregoing, the Court finds that the ALJ materially misstated the record and that the material misstatements were integral to the ALJ's ultimate decision. Therefore, the Court finds that Claimant's arguments regarding his alleged need to use a cane are well-taken.

This issue is dispositive and therefore there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and against the Commissioner, and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 30, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

³ In fact, to some extent, the Commissioner appeared to double down on the ALJ's misstatement, arguing that Claimant failed to cite medical documentation establishing that he needed a cane. R. 35.

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Kim Soo Nagle
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR NHC
15th Floor
200 West Adams Street
Chicago, Illinois 60606-5208